IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA ALLEN SINCLAIR,

       Plaintiff,

   v.

TYLER BLEWETT, Superintendent of
TRCI, et al.,

       Defendants.

_____

Case No. 2:20-cv-1397-CL

ORDER

MCSHANE, Judge:

      Magistrate Judge Mark D. Clarke filed a Findings and Recommendation (ECF No. 100), and the matter is now before this court. *See* 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b). Defendants filed objections to the Findings and Recommendation. Although Plaintiff, proceeding pro se, did not file objections, I have reviewed the file of this case *de novo*. *See* 28 U.S.C. § 636(b)(1)(c); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

1 –ORDER

Magistrate Judge Clarke provided a thorough background of the Oregon Department of Corrections (ODOC) 2020 decision to cancel all group religious services in response to the COVID-19 global pandemic. The Court assumes, without deciding, that that decision, and the later 2021 decision to offer a "modified pow-wow" meal in individual cells, violated Plaintiff's right to freely practice his religion.[1] However, the Court concludes that to the extent any individual Defendant violated Plaintiff's constitutional rights, they are entitled to qualified immunity based on the unprecedented nature of the pandemic.

There is no dispute that Adults in Custody (AICs) retain certain fundamental rights, including the right to practice—within limits arising "both from the fact of incarceration and from valid penological objectives [] including . . . institutional security"—the religion of their choice under the Free Exercise Clause of the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 248 (1987). There is also no dispute that the global pandemic that arose in early 2020 was largely unprecedented and forced public officials to make difficult choices based on rapidly evolving facts.

On March 13, 2020, President Trump declared a national emergency in response to the COVID-19 pandemic. Young Decl. ¶ 7. "That same day, ODOC restricted access to its facilities and suspended visiting, volunteers, and the majority of contractors from coming inside facilities to decrease the potential of introducing COVID-19 into its institutions." *Id.* On April 5, 2020, the Oregon Health Authority (OHA) issued "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." Young Decl. Ex. 1. The OHA adapted that guidance from the United States Center for Disease Control (CDC). Young

---

[1] It is undisputed that during Plaintiff's time in custody, he has been "actively involved in Native American Religious Services (NARS) programs." Sinclair Decl. ¶ 3; ECF No. 77.

2 –ORDER

Decl. ¶ 8. ODOC follows the CDC and the OHA "guidance for corrections facilities on social distancing." *Id.* In June 2020, ODOC Religious Services held a meeting and concluded that "due to the unpredictability of COVID-19 restrictions as of 2020 and their impact on operations, the difficult decision was made to cancel all religious group ceremonial meals for the rest of the year." Young Decl. ¶ 23.

Defendants argue that the unprecedented nature of the global pandemic entitles them to qualified immunity. In support, Defendants point to *New Mexico Elks v. Gisham*, 595 F. Supp. 3d 1018, 1027-28 (D. New Mexico, 2022). Obj. 5-6; ECF No. 109. The Court agrees that *New Mexico Elks* provides a useful summary of courts around the country analyzing government actions made in response to COVID-19. There, "Plaintiffs allege[d] that other organizations that provide similar if not identical activities to Plaintiffs' have been allowed to resume, such as golf courses, country clubs, gyms, and restaurants, but assert that fraternal organizations have not been allowed to reopen." *Id.* at 1024 (internal quotations omitted). In concluding the Defendants were entitled to qualified immunity, the court noted:

> Plaintiffs have provided no precedent, and the Court has found none, to suggest that Defendants violated any clearly established right by enacting the [Public Health Orders]—including those which imposed temporary restrictions on the sale of alcohol and/or the playing of bingo—in an effort "to address the extraordinary health emergency" created by the COVID-19 pandemic. *South Bay Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (denying application to enjoin enforcement of California order that, to limit spread of COVID-19, placed temporary numerical restrictions on public gatherings). Indeed, the Supreme Court has expressly held that "the precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement," and that where, as here, "local officials are actively shaping their response to changing facts on the ground," "the notion that it is indisputably clear that the Government's limitations are unconstitutional seems quite improbable." *Id.* at 1614.

3 –ORDER

Further, far from placing "beyond debate" any established right to be free from temporary, pandemic-related restrictions, controlling Supreme Court precedent instead instructs that: the "Constitution principally entrusts the safety and health of the people to the politically accountable officials of the States to guard and protect"; when "those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad"; and, unless those broad limits are "exceeded," "they should not be subject to second guessing by an unelected federal judiciary." *Id.* at 1613-14. In addition to the state statutes cited in each PHO, Defendants' authority to enact policies, like the PHO's in the face of an emergency is derived from the state's "police power." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991) ("The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals . . . .").

Thus, while there is no established precedent to suggest that Defendants' limitations were unconstitutional, there *is* established precedent to demonstrate that, in enacting the PHOs, Defendants acted within the limits of their Constitutionally entrusted duty to guard and protect the safety and health of the people of New Mexico. Given this binding Supreme Court precedent, "it is simply irrational to assert that a reasonable health official would have known that imposing business closings in response to a pandemic clearly violated Supreme Court precedent."

Indeed, "courts around the country have addressed qualified immunity for government officials at the 12(b)(6) stage regarding COVID-19 measures and found government officials to be immune from suit in their personal capacities. *Pleasant View Baptist Church v. Beshear*, 2021 WL 4496386, at *8 (E.D. Kty. Sept. 30, 2021) ("After examining the applicable precedent, particularly in light of a global pandemic, Pleasant View cannot demonstrate that Governor Beshear's issuance of an executive order temporarily halting in person learning violated a clearly established constitutional right, and qualified immunity will be granted on that basis." *See, e.g., Bojicic v. DeWine*, 569 F. Supp. 3d 669, 692 (N.D. Ohio, Oct. 27, 2021) (dismissing all monetary claims against all defendants on basis of qualified immunity, and explaining that "the numerous decisions upholding such orders clearly demonstrate that a reasonable person in the Health Director's position would not have known that enacting the orders at issue here would violate the law"); *Benner v. Wolf*, 2021 WL 4123973, at *5 (M.D. Pa. Sept. 9, 2021) (dismissing plaintiffs' federal damages claims on the basis of qualified immunity and explaining that, "when Defendants imposed the challenged COVID-19 restrictions, no Supreme Court precedent, Third Circuit precedent, or robust consensus or persuasive authority had held that similar restrictions violated clearly established law"); *Northland Baptist Church of St. Paul, Minn. v. Walz*, 530 F. Supp. 3d 790, 807 (D. Minn. 2021) (finding that it was "not clear that Governor Walz had fair warning that the executive orders limiting the number of people allowed in buildings violated Plaintiffs' rights, if they in fact do so," and,

> accordingly, dismissing claims against Governor Walz in his individual capacity on basis of qualified immunity); *Casey v. Ivey*, 542 F. Supp. 3d 1245, 1284-85 (M.D. Ala. 2021) (granting qualified immunity to Governor Ivey in motion to dismiss context following litigation challenging her proclamation of a national emergency and subsequent orders intended to combat COVID-19); *Hartman v. Acton*, 499 F. Supp. 3d 523, 538 (S.D. Ohio 2020) (granting qualified immunity to Ohio Department of Health director in motion to dismiss context following issuance of stay at home order in response to COVID-19 pandemic).
>
> Consistent with these decisions, the Court finds that "existing precedent did not clearly establish Plaintiffs rights at the time of the alleged violations so as to put Defendants' conduct in issuing the PHOs beyond debate." *Northland Baptist Church*, 530 F. Supp. 3d at 807.

*New Mexico Elks Ass'n*, 595 F. Supp. 3d at 10-27-28 (internal footnotes omitted) (cleaned up).

The F&R recommends denying qualified immunity because "there is a genuine issue of material fact as to whether the cancellation of NARS group programs was reasonably related to legitimate penological interests." ECF No. 100, 25. On this record, however, the Court disagrees. There is no dispute that on April 5, 2020, the OHA issued a 27-page report titled "Coronavirus Disease 2019 (COVID-19) Interim Guidance on Management of Coronavirus Diseases (2019 (COVID-19) in Correctional and Detention Facilities." Young Decl. Ex. 1; ECF No. 45. The report noted that "[t]his interim guidance is based on what is currently known about the transmission and severity of coronavirus disease 2019 (COVID-19). These guidelines have been adapted from CDC." *Id.* at 1. "This document is intended to provide guiding principles for healthcare and non-healthcare administrators of correctional and detention facilities . . . to assist in preparing for potential introduction, spread, and mitigation of COVID-19 in their facilities." *Id.* Guidance specific to prisons was necessary because, due to the nature of holding inmates in a "single physical setting" 24 hours per day, prisons "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors. . . .

Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced." *Id.*

Additionally, there is no dispute that the "tiered prevention plan and protocol" was created in April 2020 specifically to address COVID-19 concerns. Young Decl. Ex. 2. After all, that document is titled "**ODOC COVID-19 Infection Prevention Plan & Testing Protocol**." *Id.* (emphasis in original). That system remained in place throughout 2021. Young Decl. ¶ 26. There is no dispute that the tiered system prohibited any group meetings for institutions at Tiers 3 or 4. Young Decl. ¶ 27. There is no dispute that based on that policy, "the decision was made to offer a modified pow wow for 2021." Young Decl. ¶ 27. The "modified pow wow," consisting of a meal including buffalo meat and fry bread, was delivered to pow wow participants' cells on September 30, 2021. Young Decl. ¶ 31. There is no dispute that in September 2021, TRCI, where Plaintiff is housed, was at Tier 4 status.[2] Young Decl. ¶ 32.

The Court sympathizes with Plaintiff's frustrations regarding two years where his ability to practice his religion in group settings was significantly curtailed. This was a frustration shared by many, both in and out of correctional institutions. But the COVID-19 pandemic placed ODOC officials in a precarious predicament. As noted above, courts around the country have found, apparently unanimously, that public officials acting in 2020 and 2021 in response to the rapidly evolving global pandemic are entitled to qualified immunity.[3] *New Mexico Elks Ass'n*, 595 F. Supp. 3d at 1027-28 (citing cases). Like the restrictions here, the restrictions there

---

[2] The ODOC did not simply issue a blanket proclamation placing all ODOC facilities at the Tier 4 level. In September 2021, eight ODOC facilities were in Tier 1 status, three facilities at Tier 2, one facility at Tier 3, and five facilities (including Plaintiff's facility) at Tier 4 (with the most restrictions). Young Decl. Ex. 8.

[3] That actions taken today in response to COVID-19 may not be reasonable does not mean those same actions taken in 2020 and 2021 were unreasonable. Public officials had to act with what the information known at the time. The Court takes judicial notice that the vaccine for COVID-19 was not available in the United States until December 2020.

6 –ORDER

involved blanket, as opposed to targeted, restrictions.[4] Additionally, the cases mentioned in *New Mexico Elks* concerned restrictions placed on the public at large. The restrictions challenged here, however, were limited to AICs held in correctional institutions. Decades ago, the Supreme Court clarified not only that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," but also that courts must give deference to the judgment of prison officials:

> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged on a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. We recently restated the proper standard: When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. This approach ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree.

*O'Lone*, 482 U.S. 348-49 (internal footnotes, quotations, and citations omitted).

On this record, the Court concludes ODOC's blanket prohibition on group activities from May 2000 through May 2022 were reasonably related to ODOC's legitimate concerns when faced with a deadly, global pandemic. It is undisputed that "[i]t is not possible to maintain six feet of social distancing between all persons present in a facility at all times with the current

---

[4] There is no evidence indicating that ODOC officials specifically targeted NARS. Instead, due to the group settings of the NARS practices, the blanket bans tended to impact AICs practicing NARS more than AICs whose religions allow for praying or meditating in the solitude of their own cells. Plaintiff's opposition acknowledges he is unable to practice his religion in his cell. Pl.'s Resp. 18; ECF No. 76 ("As for being able to further practice my religion in my cell, this is a misconception as well. My practices revolve around smudging, pipe ceremonies, drumming, beading, singing, dancing, sweat ceremonies, and camaraderie among my brothers, which I am in constant prayer throughout all of these practices, i.e., these practices are my form of prayer."). Additionally, the restrictions did not solely target all religious groups. ODOC "eliminat[ed] group activities in the yards and limit[ed] the number of AICs that can be in the yard at one time." Young Decl. ¶ 11(g).

7 –ORDER

physical layout of the institutions and the AIC population." Young Decl. ¶ 10. That prison officials chose to allow inmates in each unit to eat together, in close quarters during the same time, does not render their decision to limit group religious gatherings unreasonable. The pandemic required ODOC to take "historic and unprecedented" actions, including "[c]losing all institutions to visitors, volunteers, and the majority of contract employees who are not deemed 'essential.'" Young Decl. ¶ 11(a). Historically, ODOC's pow wows rely extensively on community volunteers. Young Decl. ¶ 5.

It is undisputed that prison officials based their decisions on guidance from Oregon's Governor, the OHA, and the CDC. Because the Court found no Supreme Court, Ninth Circuit, or even District Court opinion placing Defendants on notice that they could be liable here for the restrictions reasonably taken in response to an unprecedented global pandemic, the Court concludes Defendants are entitled to qualified immunity. In short, the Court agrees with Defendants that a "reasonable prison official would have believed that the procedures employed in this case, all in accordance with ODOC policy—as well as OHA's and the CDC's public health and safety recommendations—were lawful." Def. Mot. 19; ECF No. 44.

Additionally, the Court concludes Plaintiff's claims for injunctive relief are now moot. "As of Fall 2022, all covid-related restrictions lifted at ODOC. Religious services have resumed normal operations, as staffing and volunteers allow. There are no current covid-related cancellations of any religious services at ODOC, and there are no plans for any such cancellations moving forward." Young Decl. ¶¶ 10-10; ECF No. 94. Therefore, Plaintiff's request for injunctive relief to allow "religious services to take place" is moot. Compl. ¶ 5; ECF No. 2. There is no further injunctive relief for the Court to grant, and there is no indication that the ODOC will reinstate the prohibitions on group religious meetings going forward.

8 –ORDER

Magistrate Judge Clarke's Findings and Recommendation (ECF No. 100) is ADOPTED in part. The Court declines to adopt the recommendations denying qualified immunity and allowing Plaintiff's claim for injunctive relief to proceed. Because the Court concludes Defendants are entitled to qualified immunity and Plaintiff's claim for injunctive relief is moot, Defendants' motion for Summary Judgment (ECF No. 44) is GRANTED.

IT IS SO ORDERED.

DATED this 2nd day of January, 2024.

                                                _____/s/ Michael J. McShane_____
                                                          Michael McShane
                                                     United States District Judge